## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————
 )
**FRANK NOLET,**                            )
 )
      **Plaintiff,**                        )
 )                    **Civil Action No.**
      **v.**                                )                    **15-11499-FDS**
 )
**DR. CATHARINA ARMSTRONG, et al.,**        )
 )
      **Defendants.**                       )
———————————————————————————)


## MEMORANDUM AND ORDER ON
## <u>DEFENDANTS' MOTIONS TO DISMISS</u>

**SAYLOR, J.**

    This is an action brought by a state prisoner for alleged medical malpractice arising out of injuries he suffered during surgery while in state custody.  Plaintiff Frank Nolet, a prisoner at the Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts, has filed a self-prepared § 1983 civil rights complaint against a number of defendants in their official and individual capacities.  Those defendants are (1) Dr. Catharina Armstrong (of the Lemuel Shattuck Hospital ("LSH")); (2) Dr. Donna Roy (of LSH); (3) Dr. Kenneth Freedman (of LSH); (4) Dr. John Jameson (of LSH); (5) Dr. Joshua Lilienstein (of LSH); (6) Dr. [Joseph] Polak (of LSH); (7) Dr. [James] Petros (of LSH); (8) Thomas Groblewski (Medical Director for the Massachusetts Department of Correction); (9) Paul Caratazzola (Health Service Administrator at OCCC); (10) Shawna Nasuti (Nurse Practitioner at OCCC); (11) Linda Roza (Nurse Practitioner at OCCC); (12) LSH Chief of Surgery; and (13) LSH Hospital Administrator.

    Nolet alleges a claim for deliberate indifference to his serious medical needs in violation

of the Eighth Amendment and 28 U.S.C. § 1983, and claims for negligence and medical malpractice under Massachusetts law.  It appears that those claims are brought against all defendants.  As relief, Nolet seeks a declaratory judgment, compensatory and punitive damages, and an order providing that he continue on his pain medication without any decrease absent court approval.

Defendants Groblewski, Caratazzola, Nasuti, and Roza (the "DOC" defendants) have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  Dr. Freedman, Dr. Jameson, and Dr. Lilienstein (the "Commonwealth defendants") have moved to dismiss the claims against them for a lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and under Rule 12(b)(6) for failure to state claim for which relief can be granted.  Defendant Dr. Roy has moved to dismiss the claims against her under Rule 12(b)(6) and for failure to comply with the notice requirement of Mass. Gen. Laws ch. 231, § 60B.

For the following reasons, DOC defendants' motion to dismiss will be granted in part and denied in part, and the motion for summary judgment will be denied without prejudice; Commonwealth defendants' motion to dismiss will be granted in part and denied in part; and Dr. Roy's motion to dismiss will be granted in part and denied in part.

## I.     **Factual Background**

The facts are set forth as described in the complaint.

The complaint alleges that in April 2013, while a prisoner at Old Colony Correctional Center, Nolet experienced trouble breathing and standing, and, after being seen by OCCC Health Services staff, was transported by ambulance to Morton Hospital.  (Compl. ¶¶ 10-13).  After being stabilized at Morton, it was determined that Nolet should be transferred to Lemuel

Shattuck Hospital for further treatment and recovery; the complaint states that "Plaintiff believes that [the decision to transfer Nolet to LSH] was implemented by defendant Thomas Groblewski." (*Id.* ¶¶ 16-17).[1]

Nolet was placed directly into the Intensive Care Unit at LSH.  (*Id.* ¶ 20).  The complaint alleges that defendants Doctors Jameson, Lilienstein, Freedman, Roy, Armstrong, Polak, and Petros were all "in charge of or assisted in [Nolet's] care . . . and treatment" at LSH.  (*Id.* ¶ 4).[2] The LSH doctors performed "[c]hest x-rays, CT scans, and bloodwork" on Nolet, and informed him that he had "severe pneumonia," for which they recommended placement of a "jejunostomy tube ('j-tube') for [ ] assistance in feeding."  (*Id.* ¶¶ 22-23).  According to the complaint, the LSH doctors told Nolet they had completed "j-tube" operations "numerous times," and that it "was a routine operation."  (*Id.* ¶ 24).  The complaint further alleges that Nolet "was never informed of the extreme risk of bodily injury or serious disfigurement" in having the operation. (*Id.* ¶ 27).  Because of his weakened state and the doctors' assurances that the surgery was a normal procedure, Nolet consented to the operation.  (*Id.*).

The complaint alleges that the next thing Nolet remembers was waking up in the ICU at the Boston Medical Center ("BMC").  (*Id.* ¶ 30).  He was informed that when the LSH doctors attempted to put the j-tube in his stomach, they had ruptured his bowels causing an infection to spread throughout Nolet's body.  (*Id.* ¶¶ 32, 34).  Nolet was told he had been rushed to BMC for "additional emergency surgeries," that he had sepsis upon his arrival at BMC, and that "it was assumed that he would not survive."  (*Id.* ¶¶ 33-35).

---

[1] The complaint identifies Groblewski as "the medical doctor for the Massachusetts Department of Corrections . . . in charge of making the decision for the placement of the plaintiff at 'LSH' for treatment."  (Compl. ¶ 5).  DOC defendants identify Groblewski as the "Statewide Medical Director for the Massachusetts Partnership for Correctional Healthcare ("MPCH"), the contracted medical provider for inmates under the care and custody of the Massachusetts Department of Correction."  (Def. Mem. 1-2).

[2] The complaint refers to this group of doctors as the "LSH defendant doctors."

Nolet remained at BMC for three or four months and underwent various additional surgical procedures to repair the bowel injury.  (*Id.* ¶¶ 36-37).  He alleges that thereafter he was transferred to LSH against his will, where he stayed two to three weeks before being transferred back to OCCC.  (*Id.* ¶¶ 36-40).

After his return to OCCC, Nolet was prescribed dressing changes several times a day "when informed to do so by defendants Paul Caratazzola, Shawna Nasuti, and Linda Roza," as well as pain medication for his wound.  (*Id.* ¶¶ 41-42).[3]

In 2014, Nolet went back to BMC for a follow-up appointment, at which time the BMC surgeons allegedly informed him that they were unable to close the surgical site due to infection.  (*Id.* ¶¶ 43-44).  In March 2015, Nolet was taken to a plastic surgeon at BMC who examined his open wound and called in other BMC surgeons for consultation.  (*Id.* ¶¶ 46-47).  The complaint alleges that one of the consulting surgeons "looked shocked" when he saw Nolet's wound, and "implied that this wound was one of the worst wounds he ha[d] seen."  (*Id.* ¶¶ 49-51).  The surgeon told Nolet that "the wound needed to be better cared for," and changed the wound-care procedures.  (*Id.* ¶ 53).  He further told Nolet that he was "upset with the progress of the wound healing [ ] and the lack of treatment [Nolet] had been receiving."  (*Id.* ¶ 54).

The complaint alleges that, at least as of the time of filing, Nolet's wound remains open, he is still in pain, and that he has been told that he "will likely need numerous skin grafts."  (*Id.* ¶¶ 56-58).  He further alleges that defendants Caratazzola and Roza are improperly "taking him off [his] pain medication."  (*Id.* ¶ 58).

## II.    <u>Procedural Background</u>

Nolet filed the complaint in this case on April 16, 2015.  The complaint brings a claim

---

[3] Defendant Paul Caratazzola was the Health Services Administrator for OCCC; defendants Shawna Nasuti and Linda Roza are nurse practitioners at OCCC.  (*Id.* ¶¶ 6-7).

under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of the Eighth Amendment (which the Court will deem Count One) and a claim for medical malpractice (which the Court will deem Count Two); all claims appear to be asserted against all defendants.[4] Defendants Groblewski, Caratazzola, Nasuti, and Roza have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Dr. Freedman, Dr. Jameson, and Dr. Lilienstein have moved to dismiss the claims against them for a lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and under Rule 12(b)(6) for failure to state claim for which relief can be granted. Defendant Dr. Roy has moved to dismiss the claims against her under Rule 12(b)(6) and for failure to comply with the notice requirement of Mass. Gen. Laws ch. 231, § 60B.

## III.    Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twom*bly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do

---

[4] The complaint also appears to assert a separate claim for "negligence"; however, because even a liberal reading of the complaint does not plausibly support a claim for negligence apart from medical malpractice, the Court will treat the two claims as one.

not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV.    DOC Defendants' Motion to Dismiss

Defendants Groblewski, Caratazzola, Nasuti, and Roza (the "DOC defendants") have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under § 1983 or Massachusetts common law. In the alternative, DOC defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that Nolet failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).

### A.    Failure to State a Claim

State prison officials violate the Fourteenth Amendment if they exhibit a "deliberate indifference" to a pretrial detainee's serious medical needs. *See Feeney v. Correctional Med. Servs.*, 464 F.3d 158, 161-62 (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In order to succeed on a deliberate-indifference claim based on inadequate medical care, "a plaintiff must satisfy both a subjective and objective inquiry." *Leavitt v. Correctional Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011) (quoting *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002)). Subjectively, he must show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." *Id.* Objectively, he must establish that the deprivation alleged was "sufficiently serious." *Id.*

To prevail on a claim of medical malpractice under Massachusetts law, a plaintiff must prove by a preponderance of the evidence that (1) a physician-patient relationship existed between the physician and the injured party, (2) the defendant "failed to conform to good medical practice," and (3) the breach was the proximate cause of the injury. *See Doherty v.*

*Hellman*, 406 Mass. 330, 333 (1989).  The relevant standard of care is whether the health-care

professional "has exercised the degree of care and skill of the average qualified practitioner,

taking into account the advances in the profession . . . [A] specialist should be held to the

standard of care and skill of the average member of the profession practicing the specialty, taking

into account the advances in the profession."  *Brune v. Belinkoff*, 354 Mass. 102, 109 (1968).

The standard of care, however, "does not require physicians to provide the best care possible."

*Palandjian v. Foster*, 446 Mass. 100, 105 (2006).  The skill level required is "not the middle but

the minimum common skill."  W.C. Prosser & W.P. Keeton, Torts § 32 at 187 (5th ed.1984),

quoted *id.* at 105.[5]

### 1.   Groblewski

There are only two allegations in the complaint that address Groblewski.  The first

identifies him as "the medical doctor for the Massachusetts Department of Correction," and the

person "in charge of making the decision for the placement of the Plaintiff at 'LSH' for

treatment."  (Compl. ¶ 5).  The complaint does not further explain the basis for that conclusion.

The second allegation concerns Nolet's first transfer from Morton Hospital to Lemuel Shattuck

Hospital, and simply states Nolet's "belie[f] that [the decision to transfer him to LSH] was

implemented by defendant Thomas Groblewski."  (*Id.* ¶ 17).  Those allegations are plainly

insufficient to support a claim for deliberate indifference, nor do they include any facts at all that

would support a conclusion that Groblewski's transfer decision was negligent in any way—even

assuming it was, in fact, Groblewski who made that decision.  Accordingly, Groblewski's

motion to dismiss the claims against him will be granted.

---

[5] Although the case law often refers to "physicians," parallel standards apply for nurse practitioners or other health-care professionals.  *See, e.g.*, *Bodden v. Nicholson*, 85 Mass. App. Ct. 1104, * 2 (2014).

2.     **Caratazzola, Nasuti, and Roza**

Liberally construed, the complaint alleges that defendants Caratazzola, Nasuti, and Roza were responsible for Nolet's treatment and care once he returned to OCCC following his emergency surgeries at BMC and recovery period at LSH.  (Compl. ¶¶ 6, 7, 42).  The DOC defendants do not appear to dispute that Nolet had a serious medical need once he returned to OCCC.  The complaint further alleges that Nolet's doctors instructed that he "be placed on pain medication for the extreme pain he was in from [his] open and oozing wound."  (*Id.* ¶ 41). According to the complaint, Caratazzola and Roza "are taking him off pain medication" even though Nolet "is still in pain from [the] open wound."  (*Id. ¶* 58).  Under the circumstances, those allegations are enough to state a claim for deliberate indifference to a serious medical need. *See, e.g.*, *Dadd v. Anoka Cnty.*, --- F.3d ---, 2016 WL 3563424, at * 3-4 (8th Cir. June 30, 2016) (allegation of denial of pain medication sufficient to state a claim for deliberate indifference to serious medical need) (citing *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991)).

The allegations against Nasuti appear to be slightly different.  On its face, the complaint omits Nasuti from the factual allegation concerning the alleged denial of pain medication.  In his opposition, Nolet explains that the deliberate indifference claim against Nasuti is instead based on her failure to refer Nolet for further or additional treatment for his wound, despite "observing Plaintiff's wound for several months [and] seeing infection and [a lack of healing]."  (Pl. Opp. at 7).  Although it is a close call, the Court concludes that those allegations, taken as true, plausibly allege that Nasuti was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," drew that inference, and yet did not seek additional care or treatment for Nolet's wound.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The complaint also alleges, in substance, that at follow-up appointments with BMC

surgeons, at least one surgeon was "shocked" at the state of Nolet's wound, implied it was one of the worst wounds the surgeon had seen, and that the surgeon was "upset with . . . the lack of treatment the Plaintiff had been receiving." (Compl. ¶¶ 49-54). Those allegations, combined with the allegations that defendants are withholding pain medication in violation of Nolet's doctors' orders, are sufficient to state a claim for medical malpractice. Accordingly, the motions of defendants Caratazzola, Nasuti, and Roza to dismiss the claims against them will be denied.

### B.   Exhaustion of Administrative Remedies

The DOC defendants have also moved for summary judgment pursuant to Rule 56, contending that Nolet failed to properly exhaust his administrative remedies against them before bringing suit under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This limitation on the ability of prisoners to sue "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A plaintiff's failure to exhaust administrative remedies is an affirmative defense as to which a defendant bears the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Here, the complaint alleges that Nolet "placed a grievance [in] accordance with the policies of 'OCCC' medical on [February 2, 2015], which was denied on [February 3, 2015]." (Compl. ¶ 59). The complaint also alleges that Nolet "appealed [that] grievance on [February 9, 2015]," and that the appeal was denied. Defendants have submitted copies of Nolet's grievances that they contend are insufficient.

"Rule 56 [ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, in making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  Here, no discovery has yet been conducted, and the evidentiary record before the Court is simply too undeveloped to support a summary judgment ruling.  Accordingly, DOC defendants' motion for summary judgment for failure to exhaust administrative remedies is premature and will be denied without prejudice to its renewal at a later date.[6]

## V.      Commonwealth Defendants' Motion to Dismiss

Doctors Jameson, Freedman, and Lilienstein (the "Commonwealth defendants") have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Although it is not entirely clear, it appears that the Commonwealth defendants' contentions in support of dismissal apply equally to both the Rule 12(b)(1) and 12(b)(6) analyses.  Because the legal standard of review is the same for both types of motions, the Court need only perform one analysis.  *See Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico*, 189 F.3d 1, 14 n.10 (1st Cir. 1999).

---

[6] The Court is not, of course, ruling that plaintiff in fact exhausted his administrative remedies, but only that the complaint plausibly alleges that he has done so and that a summary judgment ruling would be inappropriate at this stage of the litigation.

###### A.      Count One—Deliberate Indifference to Serious Medical Need

As noted above, in order for a prisoner to bring a claim for deliberate indifference to a serious need, the complaint must contain sufficient factual allegations to show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." *Burrell*, 307 F.3d at 8. "The standard encompasses a 'narrow band of conduct' . . . the treatment provided must have been so inadequate as to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Leavitt*, 645 F.3d at 497 (quoting *Feeney*, 464 F.3d at 162; *Estelle*, 429 U.S. at 105-06).

In substance, the complaint here alleges that the "LSH defendant doctors" (a group that includes the Commonwealth defendants who have moved to dismiss) persuaded Nolet to undergo an operation for placement of a "j-tube," failed to warn him of the risks involved, and then "botched" the surgery leading to sepsis, further emergency surgeries, and a prolonged recovery period.  (*See* Compl. ¶¶ 19-35).  Those allegations do not rise to the level of "wanton infliction of pain" or "repugnant" conduct necessary for a violation of the Eighth and Fourteenth Amendments.  *See Leavitt*, 645 F.3d at 497 ("[S]ubpar care amounting to negligence or even malpractice does not give rise to a constitutional claim."); *see also Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").  Accordingly, the Commonwealth defendants' motion to dismiss will be granted as to Count One.

The Court also notes that the complaint includes the three "Commonwealth" defendants—Dr. Jameson, Dr. Freedman, and Dr. Lilienstein—in the group of doctors referred to as the "LSH defendant doctors."  (*See* Compl. ¶ 4).  The group of LSH defendant doctors, in turn, includes those three defendants as well as Dr. Armstrong, Dr. Roy, Dr. Polak, and Dr.

Petros. *Id.* Because the factual allegations described above are brought against the entire group of doctors, the same reasoning applies and the Court will *sua sponte* dismiss Count One against the latter four doctor-defendants as well.[7]

### B.      Count Two—Medical Malpractice

The Commonwealth defendants have also moved to dismiss the medical malpractice claim against them on the grounds that they are immune from suit under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 1, *et seq.*, and that, in any respect, Nolet has failed to comply with the MTCA's presentment requirements.

Public employees are immune from tort liability pursuant to Mass. Gen. Laws ch. 258, § 2, which states that "no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."  The Commonwealth defendants contend that Lemuel Shattuck Hospital is a public employer, and that as employees of LSH, they are public employees and therefore immune from suit.  That may well be true; however, those conclusions are not evident on the face of the complaint, nor have defendants presented the Court with any other documents or evidence that may be considered on a motion to dismiss.[8]  Accordingly, defendants' motion to dismiss Count Two will be denied.[9]

---

[7] A district court may, *sua sponte*, dismiss the claim of a plaintiff proceeding *in forma pauperis* if the court determines that it fails to state a claim on which relief can be granted.  *Feeney*, 464 F.3d at 161 n.3 (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

[8] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[9] Because the Court is unable at this stage to determine whether the MTCA applies, it need not consider defendants' contention that Count Two must be dismissed for a failure to comply with the presentment requirements of Mass. Gen. Laws ch. 258, § 4.

**VI.**   **Dr. Roy's Motion to Dismiss**

Dr. Roy has moved to dismiss the claims against her under Fed. R. Civ. P. 12(b)(6) for

for failure to state a claim upon which relief can be granted.  Dr. Roy has also moved to dismiss

Count Two against her on the ground that Nolet has failed to comply with the notice

requirements for medical malpractice actions contained in Mass. Gen. Laws ch. 231, § 60L.

**A.**     **Failure to State a Claim**

For the reasons described above, the Court will dismiss Count One against Dr. Roy for

deliberate indifference to a serious medical need.  Dr. Roy also contends that the medical

malpractice claim against her (Count Two) should be dismissed because the complaint fails to

assert any specific wrongdoing on her part, or to otherwise connect her to Nolet's treatment.

A document filed by a *pro se* party "is to be liberally construed, and a pro se complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings

must be construed so as to do justice.").

As discussed above, the allegations in the complaint relevant to Nolet's allegedly

"botched" j-tube surgery are made against the "LSH defendant doctors" as a whole.  And, also as

discussed above, that group includes seven doctors, one of which is Dr. Roy.  It is clear from the

face of the complaint that Nolet was unconscious during the j-tube surgery, and, in any event, it

would be difficult for a layman to know who, specifically, among a group of doctors was

responsible for allegedly negligent conduct that occurred during a surgery.  Taken as a whole,

and considering Nolet's status as a prisoner proceeding *pro se*, the Court finds that the

allegations in the complaint are sufficient to state a plausible claim for medical malpractice

against Dr. Roy.

### B.    Mass. Gen. Laws ch. 231, § 60L

In the alternative, Dr. Roy contends that Nolet's medical malpractice claim should be dismissed for failure to comply with the notice requirements of Mass. Gen. Laws ch. 231, § 60L. Section 60L(a) provides that "a person shall not commence an action against a provider of health care as defined in the seventh paragraph of section 60B unless the person has given the health care provider 182 days written notice before the action is commenced." Mass. Gen. Laws ch. 231, § 60L(a).[10]

Section 60L is a relatively new statute and, as far as the Court is aware, no Massachusetts court decision has considered the requirements it imposes in a written opinion. It is unclear whether the statute makes proper notice a "special element" of a medical malpractice claim that must be affirmatively pleaded in a complaint. *See Ashley v. New York State Office of Children & Fam. Servs.*, 33 F. Supp. 3d 76, 78 (D. Mass. 2014); *cf. Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975) (requirement of sending demand letter prior to suit under Massachusetts consumer protection law, Mass. Gen. Laws ch. 93A, § 9, is a "special element" that must be alleged in complaint).

Regardless, Section 60L does provide for several exceptions, one of which appears to apply here. Under Section 60L(k), "[n]othing in this section shall prohibit the filing of suit at any time in order to seek court orders to preserve and permit inspection of tangible evidence." Mass. Gen. Laws ch. 231, § 60L(k). Shortly after this Court granted Nolet's motion to proceed

---

[10] Mass. Gen. Laws ch. 231, § 60B defines a "provider of health care" as "a person, corporation, facility or institution licensed by the commonwealth to provide health care or professional services as a physician, hospital, clinic or nursing home, dentist, registered or licensed nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, social worker, or acupuncturist, or an officer, employee or agent thereof acting in the course and scope of his employment."

*in forma pauperis*, *see* Dkt. No. 9, Nolet filed a "Motion for Order of Waiver of Costs and Fees of Lemuel Shattuck Hospital Medical Records from his Medical File," Dkt. No. 12.  In that motion, Nolet sought a court order waiving the fees charged by LSH to provide Nolet with a copy of his medical records.  *See id.*  Given Nolet's indigent status, and his inability as a prisoner to inspect his own records in person at LSH, the Court concludes that the filing of a complaint was, at least in part, necessary to Nolet's ability to seek a court order "permit[ting] inspection of tangible evidence," namely, his medical records.

Furthermore, and in any event, the Court also notes that Dr. Roy has not submitted any evidence to the Court in support of her contention that no notice was provided.  *Cf. Corrada Betances v. Sea-Land Service, Inc.*, 248 F.3d 40 (1st Cir. 2001) (assertions by counsel in legal memoranda are insufficient to establish material facts).  Accordingly, Dr. Roy's motion to dismiss Count Two will be denied.

## VII.   <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss are GRANTED in part and DENIED in part, as follows:

1.     The motion of defendant Groblewski to dismiss the complaint against him pursuant to Rule 12(b)(6) is GRANTED.

2.     The motions of defendants Caratazzola, Nasuti, and Roza to dismiss the complaint against them pursuant to Rule 12(b)(6) are DENIED.

3.     The motion of defendants Caratazzola, Nasuti, and Roza for summary judgment pursuant to Rule 56 for failure to exhaust administrative remedies is DENIED without prejudice to its renewal.

4.     The motion of defendants Jameson, Freedman, and Lilienstein to dismiss the

complaint pursuant to Rule 12(b)(6) is GRANTED as to Count One and DENIED as to Count Two.

5.       The claims against defendants Armstrong, Polak, and Petros asserted in Count One are hereby DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

6.       The motion of defendant Roy to dismiss the complaint against her pursuant to Rule 12(b)(6) and Mass. Gen. Laws ch. 231, § 60L is GRANTED as to Count One pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and DENIED as to Count Two.


**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 15, 2016